**COMMONWEALTH of Pennsylvania**

v.

**Alexander O'DRAIN, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 21, 2003.

Filed July 10, 2003.

Edward V. Schulgen, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: FORD ELLIOTT, BENDER, and OLSZEWSKI, JJ.

FORD ELLIOTT, J.

¶ 1 Alexander O'Drain appeals from his judgment of sentence that was entered by the Court of Common Pleas of Philadelphia County on January 3, 2002. Following a bench trial, appellant was convicted of indecent assault and corruption of a minor.[1] He was sentenced to five years of probation on both counts to run concurrently and to register with the state police for ten years under Megan's Law for the indecent assault conviction. We affirm.

¶ 2 The following evidence was entered at trial. On June 30, 2002, appellant was working as an exterminator for JRS Exterminating. Appellant arrived at 1908 Whittler Street in Philadelphia, between 1:30 and 2:00 p.m. to perform exterminating services at that address. The residence is the home of Jessica Stein, the babysitter of A.Z.[2]—who was four years old at the time. Appellant was spraying inside and around the perimeter of the residence. A.Z. was following appellant around the house and asking him questions as he applied pesticides and set mousetraps. At one point, appellant and A.Z. were alone in the basement.[3]

¶ 3 Thereafter, A.Z. told her mother and her mother's fiancé, Ian Jeffrey (hereinafter "Jeffrey"), that she had a boyfriend.[4] Jeffrey asked A.Z. what she meant, and she told her mother and Jeffrey that the "sprayer guy" kissed her at her babysitter's house. A.Z. testified that the "sprayer guy" kissed her in three places that were described as her "mouth," "stomach," and "private" with her clothes off, and that they would go on a "date."

¶ 4 On October 22, 2001, appellant filed a motion for post-verdict relief in which he argued, in part, impermissible hearsay testimony was allowed at trial. (R. at D–3.) On January 3, 2002, appellant's motion for relief was denied. (R. at 6.) Appellant filed this timely appeal.

■ ¶ 5 The sole question appellant raises on appeal is: "did the trial court commit an error of law when it allowed the hearsay testimony of Ian Jeffrey?"

¶ 6 The contested testimony presented at appellant's bench trial before the Honorable Carolyn E. Temin and the crux of this appeal follows:

[MS. LENKO:] Where did this conversation take place?

[JEFFREY:] How it started, I was actually walking up upstairs [sic], to go upstairs. We have three bedrooms plus a bathroom, and [A.K.] was laying on the couch and—

MR. EARL:—Objection.

THE COURT: Overruled. I already said it is admissible, Mr. Earl. You have

---

1. Appellant was found not guilty of involuntary deviate sexual intercourse, aggravated indecent assault, sexual assault, statutory sexual assault, simple assault, recklessly endangering another person, and false imprisonment.

2. We note that appellant and trial court refer to the child by her full name. We have utilized the child's initials throughout this memorandum to preserve her privacy. *In the Interest of R.C.*, 427 Pa.Super. 196, 628 A.2d 893, 894 (1993).

3. There is testimony that appellant was alone with A.Z. in the basement and garage. (Notes of testimony, 6/7/01 at 15, 86).

4. It is not clear from the transcript when A.Z. first told her mother and Jeffrey about the indecent contact, but the Commonwealth asserts that A.Z. told them on the same night it happened (Commonwealth's brief at 2); and appellant testified that he was in A.Z.'s presence on June 30, 2000, and that he spoke with his boss the next day about a problem. (Notes of testimony, 6/7/01 at 77–78, 84–85.)

a continuing objection. Please don't interrupt.

[JEFFREY:] I was walking up the stairs to go upstairs. [W]e have three bedrooms plus a bathroom upstairs. I was walking up the steps and [A.K.] was laying on the couch and she said—

MR. EARL: Objection.

THE COURT: Overruled. I've already said it's admissib[l]e[,] Mr. Earl. You have a continuing objection. Please don't interrupt.

[JEFFREY:] I was walking up the stairs and [A.K.] said, 'Ian, I have a boyfriend.' I said, 'Oh, do you, [A.K.]?' And then she said, 'Yeah,['] and I kept walking up the st[ai]rs, and then she said, 'And he kissed me.' And then I took a step backwards at that point. Then she said, 'He kissed me with the tongue.' At that point I just said, '[A.K.], come with me.' We actually walked up the stairs where her mother was up in her bedroom and the three of us sat down. Actually me and Colleen were sitting on the bed where [A.K.] stood in front of us and proceeded to tell us what exactly happened.

[MS. LENKO:] What did she tell you?

[JEFFREY:] I said, 'Tell your mom what you just told me.' And [A.K.] turned around and said, 'I'm going to get in trouble. I'm not allowed to say anything. I'm not supposed to say anything. And at that point I said, '[A.K.], you're not going to get in trouble. Just tell the truth. As long as you tell the truth, you'll never get in trouble, even if you did something wrong, we'll work through it.' And she said, 'Well, I wasn't supposed to say anything.'

So, it comes out where [A.K.] was— she kissed a guy. She kissed a guy with her tongue, and we said how did you kiss a guy and where did you kiss a guy, because everything was foggy at first.

What exactly happened? So, I'm sitting there, and we're asking her, '[A.K.], where was this at?' 'It was Jessica's house.' Jessica is the babysitter. 'So, what exactly happened, [A.K.]?' 'Well, the spray guy kissed me here,' and she touched her mouth. 'Here and here.' And she was touching her frontal area. Then we proceeded to say, '[A.K.], did he kiss you over the clothes or under the clothes,' and things of that nature. As you can tell, everything is racing through our heads right now about what's going on. We don't know exactly what happened.

Notes of testimony, 6/7/01 at 50–53.

¶ 7 Appellant argues that Judge Temin impermissibly allowed Jeffrey's hearsay testimony pursuant to the tender years exception. (Appellant's brief at 10.) In its opinion, the trial court examined the requirements for admitting hearsay testimony under the tender years exception and concluded that Jeffrey's testimony sufficiently met the provisos of that statute. (Trial court opinion, 5/10/02 at 2–3.)

¶ 8 Generally, hearsay is inadmissible at trial unless it falls into one of the exceptions to the hearsay rule. *Commonwealth v. Bean*, 450 Pa.Super. 574, 677 A.2d 842, 844 (1996). The tender years exception to the rule against hearsay is set forth at 42 Pa.C.S.A. § 5985.1. The relevant sections of the statute are as follows:

§ 5985.1. **Admissibility of certain statements**

(a) **General rule.**—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing physical abuse, indecent contact or any of the offenses enumerated in 18 Pa.C.S. Ch. 31 (relating to sexual offenses) performed with or on the child by another, not otherwise ad-

missible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

    (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

    (2) the child either:

        (i) testifies at the proceeding; or

        (ii) is unavailable as a witness.

. . . .

**(b) Notice required.**—A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

42 Pa.C.S.A. § 5985.1(a)(b).

■■■ ¶ 9 As we have held in *Commonwealth v. Fink*, 791 A.2d 1235, 1248 (Pa.Super.2002), the tender years exception allows for the admission of a child's out-of-court statement due to the fragile nature of young victims of sexual abuse. Any statement admitted under § 5985.1 must possess sufficient indicia of reliability, as determined from the time, content, and circumstances of its making. *Id.* (citations omitted).

¶ 10 During the bench trial, and while A.Z. was out of the courtroom, Judge Temin overruled appellant's objections to Jeffrey's hearsay testimony. Judge Temin believed Jeffrey's testimony was relevant. Jeffrey's testimony came after Judge Temin heard testimony from A.Z. A.Z. was younger than 12 years of age at the time she described the indecent contact to her mother and Jeffrey and at the time of trial. A review of the record reveals that A.Z. was competent to testify.[5] A.Z.'s relevant and admissible testimony included being alone with the "sprayer guy" in the basement, going on a "date sometime," and "feeled [sic] his tongue." (Notes of testimony, 7/6/01 at 15, 18, 27.) Appellant's boss, A.Z.'s babysitter, and the babysitter's brother also testified prior to Jeffrey testifying. After hearing those previous witnesses' testimony, Judge Temin believed that Jeffrey's hearsay testimony at issue was relevant and admissible given the content, circumstance, and time surrounding A.Z.'s statements to him and her mother. *See Commonwealth v. Thomas*, 552 Pa. 621, 638, 717 A.2d 468, 477 (1998) ("[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make the fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact[ ]"). Moreover, Jeffrey's hearsay testimony in essence repeated A.Z.'s earlier testimony. Therefore, A.Z.'s statements to her mother and Jeffrey, and offered by Jeffrey at trial, provided the indicia of reliability to Judge Temin. We agree and are satisfied that A.Z.'s statements fulfill the Rule's general requirements. 42 Pa.C.S.A. § 5985.1(a).

■■■ ¶ 11 Appellant also asserts that the trial court erred by admitting Jeffrey's testimony because proper notice was not provided. Relative to the notice requirement under this hearsay exception, the Commonwealth has the burden of providing actual notice of an intention to offer the hearsay statement. *Commonwealth v. Crossley*, 711 A.2d 1025, 1028 (Pa.Su-

---

**5.** We note that appellant's counsel did not object to A.Z.'s competency to testify at the time of her *voir dire* examination. (Notes of testimony, 6/7/01 at 13.)

per.1998) (the tender years exception statute mandates more than ordinary discovery and mandates heightened discovery).

¶ 12 In support of his position, appellant cites to our holding in *Crossley, supra.* In *Crossley*, the Commonwealth and the trial court believed that because defendant's counsel received statements from the victim's mother and grandmother as part of a discovery packet, and because the mother testified at the preliminary hearing, that was sufficient notice to allow their testimony under § 5985.1. *Crossley*, 711 A.2d at 1027. We held that those efforts by the Commonwealth were, however, not sufficient under the rule. *Id.*

¶ 13 This case differs from *Crossley* in that here the Commonwealth properly gave separate and distinct notice, beyond the requirements of discovery, to appellant of its intention to proceed by way of the tender years exception. Here, the Commonwealth did not merely provide appellant with a discovery packet containing relatives' statements.[6] The Commonwealth specified in its notice that: "the Commonwealth may introduce at . . . . trial testimony that the victim, [A.Z.], told her mother, [ ], that the defendant kissed her

with his tongue on various parts of her body including her mouth and vagina." (R. at 113a–115a.)

¶ 14 The Commonwealth's notice covered the scope of Jeffrey's testimony and described those acts of which appellant has been convicted (*i.e.*, A.Z. being kissed on various parts of her body). Further, the Rule's notice requirement does not state that the proponent must identify the specific witness who may introduce the statements at trial. We therefore hold that the Commonwealth gave proper notice to appellant regarding the intention to introduce testimony of A.Z.'s statement pursuant to § 5985.1. As such, we do not find that Judge Temin erred in admitting Jeffrey's testimony.

¶ 15 Alternatively, we agree with the Commonwealth in this instance that Jeffrey's hearsay testimony was admissible under Rule of Evidence 613(c), commonly known as the prompt complaint exception to the hearsay rule.[7] Pennsylvania Rule of Evidence 613(c)(1) allows evidence of prior consistent statements to rebut an express or implied charge of "fabrication, bias, improper influence or motive, or faulty mem-

6. A review of the record reveals that Jeffrey did not give a statement that would have been required to be turned over in discovery.

7. We note that this court may affirm the decision of the trial court if there is any basis on the record to support the trial court's action; this is so even if we rely on a different basis in our decision to affirm. *Commonwealth v. Garcia*, 746 A.2d 632, 638 (Pa.Super.2000); *see also Commonwealth v. Hinton*, 269 Pa.Super. 43, 409 A.2d 54, 57 (1979) (a judgment may be affirmed by the appellate court on any legal theory, regardless of the rationale or theory employed by the lower court); *Commonwealth v. Guimento*, 341 Pa.Super. 95, 491 A.2d 166 n. 2 (1985) (an appellate court may affirm a correct decision of the trial court for any reason, even if the trial court offered an erroneous reason for its decision); *Weber v. Lynch*, 237 Pa.Super. 48, 346 A.2d

363, 366 n. 6 (1975) (noting that we may "uphold a decision below if there exists any proper basis for the result reached").

Therefore, after a careful review of the record, we hold that there was sufficient evidence presented at trial to convict appellant. Specifically, A.Z.'s temporal and substantive testimony of the events, and appellant's testimony placing him alone with A.Z. at the babysitter's house is enough to uphold his convictions. Appellant did testify that the only physical contact he had with A.Z. was when he "patted her on the head." (Notes of testimony, 6/7/01 at 88.) When passing upon the credibility of witnesses, however, the factfinder is free to believe all, part, or none of the evidence. *Commonwealth v. George*, 705 A.2d 916, 918 (Pa.Super.1998), *appeal denied*, 555 Pa. 740, 725 A.2d 1218 (1998).

ory." In cases involving sexual assault, Rule 613 authorizes the Commonwealth to present evidence in its case-in-chief of a prompt complaint by the victim "because [the] alleged victim's testimony is automatically vulnerable to attack by the defendant as recent fabrication in the absence of evidence of hue and cry on her part." Pa.R.Evid. 613(c) (comment), citing *Commonwealth v. Freeman,* 295 Pa.Super. 467, 441 A.2d 1327, 1331 (1982). "Evidence of a complaint of a sexual assault is 'competent evidence, properly admitted when limited to establish that a complaint was made and also to identify the occurrence complained of with the offense charged.'" *Commonwealth v. Stohr,* 361 Pa.Super. 293, 522 A.2d 589, 592–593 (1987) (*en banc*), quoting *Commonwealth v. Freeman,* 295 Pa.Super. 467, 441 A.2d 1327, 1331 (1982). The contested hearsay testimony in this case also corroborated A.Z.'s earlier testimony about being kissed on different areas on her body. *Id.*[8]

¶ 16 Accordingly, we find no error on the part of Judge Temin.

¶ 17 Judgment of sentence affirmed.

---

**8.** The transcript does not reveal the specific basis that Judge Temin overruled appellant's objection to Jeffrey's hearsay testimony. Given our role as an error correcting court and given the above further analysis, we cannot say that Judge Temin erred in allowing the testimony. *See Commonwealth v. Reidenbaugh,* 282 Pa.Super. 300, 422 A.2d 1126 (1980) ("[a] correct decision will be sustained on appeal if it can be sustained for any reason whatsoever, even if the lower court offered an erroneous reason to support its action").